UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN REGAN, | ) |
|        Plaintiff, | ) |
| v. | ) Case No. 20-cv-1352-JBM |
| WEXFORD, et. al., | ) |
|        Defendants. | ) |

### MERIT REVIEW ORDER – SECOND AMENDED COMPLAINT

**Joe Billy McDade, U.S. District Judge:**

Plaintiff, proceeding *pro se,* has filed a second amended complaint [ECF 17] alleging deliberate indifference to his serious medical needs at the Pontiac Correctional Center ("Pontiac"). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013)(citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### FACTS

Plaintiff brings claims against Wexford, Dr. Tilden, Nicki Rambo, and two unknown medical technicians related to a 41 day delay in receiving a refill on his pain medication. On or

about March 16, 2017, while incarcerated at Pontiac, Plaintiff was diagnosed with degenerative disc disease. Around that time, Plaintiff was prescribed Naprosyn and/or other nerve pain medication. Plaintiff alleges that Defendant Dr. Tilden, a Wexford employee that is the medical director at Pontiac, diagnosed and treated him for this condition in March 2017. Accordingly, Defendant Tilden knew of his condition and his need for medication.

Plaintiff's medication ran out on or about July 17, 2018. Plaintiff wrote a sick call request and handed it to a female medical technician ("Unknown Medical Technician A"), who agreed to turn it in for him. Plaintiff does not provide a physical description, but states that she working on 3 p.m. to 11 p.m. shift on July 17, 2018 and passed his cell distributing nightly medication to his neighbor. The request went unanswered, and he began to feel more pain.

He wrote a second sick call request on July 26, 2018, which was handed to another female medical technician ("Unknown Medical Technician B"). Medical Technician B is a Caucasian woman with blonde hair. She was working on July 26, 2018 at approximately 2:30 a.m. Plaintiff's second sick call request also went unanswered.

After about twenty days of not receiving his medication, Plaintiff filed an emergency grievance. However, he was told it was not an emergency and to forward it to the grievance officer. Plaintiff complied. Finally, on or about August 20, 2018, Plaintiff was seen by Medical Staff and the prescription was renewed. However, the medication still was not delivered until August 28, 2018.

Plaintiff alleges that during these 41 days of not receiving his necessary pain medication, he suffered extremely heightened pain in his right leg, foot, and mid to lower back. Plaintiff also alleges that he wrote to Defendant Tilden at some point during the 41 day period, but did not receive a response.

Plaintiff alleges that Defendant Nicki Rambo is the Health Care Administrator at Pontiac and is employed by Wexford. Defendant Rambo is responsible for setting up policies, including the sick call system. Plaintiff alleges, that Defendant Rambo is responsible for failing to reply to Plaintiff's sick call requests in a timely manner and/or failing to ensure the sick call policy was enforced. Plaintiff alleges that she should have treated a grievance she reviewed as an emergency.

Plaintiff alleges that Wexford has failed to implement a policy that would insure that medications are promptly received when prescribed. Plaintiff cites his own eight day delay from when he was prescribed medication to the date it was delivered. He also provides affidavits of two other inmates who suffered lengthy delays in receiving medications after they had been prescribed. He also writes that Wexford's sick call procedures are lacking and its employees routinely and unnecessarily do not reply to requests for treatment or medication.

Since filing his original complaint, Plaintiff suffered another delay of 111 days waiting for an unrelated T-gel prescription renewal. Plaintiff alleges that on August 25, 2021, Defendant Rambo stated that she would put in a slip for sick call so that his T-gel prescription could be renewed. However, he did not see Dr. Tilden and his prescription was not renewed until November 14, 2021. Plaintiff additionally alleges that Defendant Rambo's delay in scheduling him for an appointment to refill his T-gel prescription was retaliation for filing this lawsuit.

Plaintiff alleges that he is suing Defendant Tilden and Defendant Rambo in both their personal and professional capacities. He seeks injunctive relief, including the creation of new policies that would ensure sick call requests are heard and prescribed medications are filled and delivered in a timely manner. He also seeks compensatory and punitive damages.

## ANALYSIS

Plaintiff has alleged an Eighth Amendment claim of deliberate indifference against Defendant Rambo in her individual and official capacity, as well as a claim against Wexford. "A prison official violates the Eighth Amendment by acting with subjective 'deliberate indifference' to an inmate's 'objectively serious' medical condition." *Reck v. Wexford Health Sources, Inc.*, No. 19-2440, 2022 WL 538716, at *6, --- F.4th --- (7th Cir. Feb. 23, 2022) (citing *Sherrod v. Lingle,* 223 F.3d 605, 610 (7th Cir. 2000)). Deliberate indifference requires more than negligence; "something akin to recklessness" is needed. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Here, Plaintiff has adequately alleged that his degenerative disc disorder is a serious medical condition that causes him great pain when it is left untreated. When his prescriptions lapsed and he was not given needed medication for 41 days, he suffered unnecessary pain. He has alleged facts that show Defendant Rambo knew of his medical condition because she was involved in his emergency grievance denial, but yet still did not promptly schedule a sick call appointment or ensure his prescription was renewed and refilled. Construing these allegations in Plaintiff's favor, the Court infers that Defendant's job obliged her to schedule sick call appointments and to ensure prescriptions were renewed and refilled. This is sufficient to allege a deliberate indifference claim against Defendant Rambo in her individual capacity. The Court notes, however, that the efficacy of this claim depends upon the scope of the personal responsibility and involvement of Defendant Rambo as Wexford's employee, the determination of which will be critical at the summary judgment and trial stages. Furthermore, if Defendant Rambo is not liable to Plaintiff, there is no basis for the *Monell* claim against Wexford. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986); *Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1994).

Wexford, a private corporation, has potential liability for constitutional infringement under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691-92 (1978). This is so if the alleged injury results from the application of an unconstitutional policy or practice promulgated or allowed by Wexford. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). To recover under *Monell*, a plaintiff must establish that (1) he suffered a deprivation of a federal right (2) as a result of an express municipal policy, a widespread custom, or a deliberate act of a decisionmaker with final policymaking authority for the municipality that (3) was the proximate cause of his injury. *King v. Kramer*, 763 F.3d 635, 649 (7th Cir. 2014). Plaintiff has alleged that Defendant Rambo, as a Wexford employee, was responsible for setting up a sick call system and scheduling appointments. Plaintiff alleges that the policy is inadequate because it does not allow for prompt refilling of prescription medication. He also alleges that Wexford does not have a policy of promptly filling prescriptions once they are prescribed. He cites two personal instances of delay in receiving prescribed medication, as well as affidavits of two other inmates. Moreover, he has alleged that the insufficient policies caused his injuries. This is enough to establish a colorable claim of an unconstitutional policy or practice on the part of Wexford. Ordinarily, a handful of disparate instances as alleged, including the two personal instances of delay in refilling Plaintiff's prescriptions does not a policy make; and for that reason alone, this official capacity claim may not survive summary judgment.

Plaintiff has not stated a claim against Defendant Tilden. Section 1983 liability is predicated on fault, so to be liable, a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir.2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir.2001)). While Defendant Tilden

knew of Plaintiff's condition, Plaintiff does not adequately allege that Defendant Tilden knew that Plaintiff needed a refill of his pain medication. Plaintiff states that he wrote to Dr. Tilden at some point during the delay, but does not specify what he told Dr. Tilden or how he knew Dr. Tilden received the request. Accordingly, Dr. Tilden is dismissed from this suit.

Plaintiff has also not stated a claim against Unknown Medical Technicians A and B. While Plaintiff alleges he handed them a sick call request, he does not allege that they did not deliver it. He also does not allege that these individuals had any responsibility or ability to refill the prescription. Accordingly, Unknown Medical Technicians A and B are dismissed from this suit as well.

**IT IS THEREFORE ORDERED:**

1) Pursuant to its merit review of Plaintiff's second amended complaint under 28 U.S.C. § 1915A, the Court finds that Plaintiff has presented enough facts to proceed with an Eighth Amendment claim of deliberate indifference Defendants Rambo and Wexford Health Sources for delays in renewing and refilling his prescriptions. All other claims will not be included except in the Court's discretion upon motion by a party for good cause shown, or by leave of court pursuant to Federal Rule of Civil Procedure 15.

2) The Court directs the Clerk of the Court to terminate Dr. Tilden as a Defendant.

3) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendant's counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

4) The Court will attempt service on Defendants by mailing a waiver of service. Defendants have sixty days from service to file an Answer. If Defendants have not filed Answers or appeared through counsel within ninety days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

5) If a Defendant no longer works at the address Plaintiff provided, the entity for whom Defendant worked while at that address shall submit to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

6) Defendants shall file Answers within sixty days of the date the Clerk sends the waiver of service. A motion to dismiss is not an Answer. The Answer should include all defenses appropriate under the Federal Rules. The Answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an Answer sets forth Defendant's positions. The Court does not rule on the merits of those positions unless and until Defendant files a motion. Therefore, no response to the Answer is necessary or will be considered.

7) This District uses electronic filing, which means that, after Defendant's counsel has filed an appearance, Defendant's counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendant's counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendant's counsel. Discovery requests or responses sent to the Clerk will be returned unfiled

unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendant's counsel has filed an appearance, and the Court has entered a scheduling order, which will explain the discovery process in more detail.

8) The Court grants Defendant's counsel leave to depose Plaintiff at his place of confinement. Defendant's counsel shall arrange the time for the deposition.

9) Defendants shall provide Plaintiff with copies of all medical records and related documents pertaining to Plaintiff's claims.

10) Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

11) If Defendant fails to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendant and will require Defendant to pay the total costs of formal service under Federal Rule of Civil Procedure 4(d)(2).

12) The Court directs the Clerk to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.

13) The Court directs the Clerk to attempt service on the named Defendants under the standard procedures.

3/17/2022　　　　　　　　　　　　　　/s/ Joe Billy McDade
ENTERED　　　　　　　　　　　　　　JOE BILLY MCDADE
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE